IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

REBECCA MCCOY-EDDINGTON,           §
ABBIE OVERSTREET, OSCAR            §
DAVENPORT, RONA CALDWELL,          §
ROBERT POPE, SHARON DEMPSEY,       §
VINCENT SANDEL,                    §
JOE WILBERT, III, and              §
KAMI HENDERSON-MANUEL,             §
                                   §
     Plaintiffs,                   §
                                   §
v.                                 §        CIVIL ACTION NO. H-05-0395
                                   §
BRAZOS COUNTY, BRAZOS COUNTY       §
JUVENILE BOARD, BRAZOS COUNTY      §
DEPARTMENT OF JUVENILE             §
SERVICES, and RHONDA GILCHRIST,    §
in both her Individual and         §
Official Capacities,               §
                                   §
     Defendants.                   §

**MEMORANDUM AND ORDER**

Pending in this race discrimination case is the Motion for Summary Judgment (Document No. 49) filed by Defendants Brazos County, Brazos County Juvenile Board, and Brazos County Department of Juvenile Services; Defendant Rhonda Gilchrist's Motion for Summary Judgment (Document No. 55); and Plaintiff Kami Henderson-Manuel's Cross Motions for Summary Judgment (Document Nos. 57 and 63).  After carefully considering the motions, the responses (Document Nos. 57, 62, and 63), the summary judgment evidence, and the applicable law, the Court concludes, for the reasons set

forth below, that Defendants' Motions for Summary Judgment should both be granted.[1]

## I. Background

This case involves claims of race discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII") and 42 U.S.C. § 1983, and state law claims of breach of contract and intentional infliction of emotional distress. Plaintiff Kami Henderson-Manuel, the only Plaintiff remaining in this case,[2] alleges in her Complaint that she was forced to resign and/or was fired from her position as a juvenile detention officer on the basis of her race (African-American), and that she was subjected to a racially hostile work environment. Plaintiff also maintains that her termination was in breach of her express or implied contract of employment with Defendants and that she suffered intentional infliction of emotional distress.

The undisputed facts show that Plaintiff was employed by the Brazos County Juvenile Services Department ("the Department") as

_____

[1] Defendants' objections to certain exhibits attached to Plaintiff's Responses and Cross-Motions for Summary Judgment (Document Nos. 59 and 63), namely, to the handwritten notes superimposed on deposition transcripts marked as Plaintiff's Exhibits 7, 12, 15, and 16; and to Plaintiff's Exhibit 10 as hearsay, are all SUSTAINED.

[2] All other Plaintiffs moved voluntarily to dismiss their claims. Their motion was granted on September 11, 2006. *See* Document No. 50.

a juvenile detention officer from June 1999 through November 11, 2003, when she resigned in lieu of being terminated.   The undisputed facts also show that Defendant Rhonda Gilchrist became the Executive Director of the Brazos County Department of Juvenile Services in March 2003, and that it was she who advised Plaintiff that she could either resign or she would be terminated on November 11, 2003.

The facts related to Plaintiff's termination are also not materially in dispute.   Upon noting some discrepancies in the paperwork of the night shift employees, it was brought to Gilchrist's attention that required bed checks had not been performed for a period of nearly three hours during the night of November 10 - 11, 2003, in dormitory "C."   Department policy required bed checks at fifteen minute intervals for youths residing in the Department's dormitories.   It was the responsibility of those employees working the night shift (6:00 p.m. to 6:00 a.m) to perform the bed checks and verify, with their initials on each of the four dormitory logs, that the bed checks had been done.   On the night shift of November 10-11, 2003, Plaintiff was assigned to perform the bed checks on dormitories "C" and "D" (referred to as "C Pod" or "Charlie Pod" and "D Pod" or "Delta Pod," respectively).   Plaintiff admits that she did not personally conduct any bed checks on "C Pod" after 12:45 a.m., but also admits that she nonetheless initialed the log for "C Pod" Room 10 to verify that she had done

3

bed checks on that room at each of the required 15 minute intervals, from the time frame of 12:56 a.m., forward.  On November 11, 2003, Plaintiff was asked to resign in lieu of being terminated.  Defendants claim that this action against Plaintiff was taken based on her false verification that she had performed bed checks on "C Pod."

## II.  Summary Judgment Standard of Review

Rule 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).  The moving party must "demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2553 (1986).

Once the movant carries this burden, the burden shifts to the nonmovant to show that summary judgment should not be granted. Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998).  A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice.  Id.  "[T]he nonmoving party must set forth

4

specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." Id.

In considering a motion for summary judgment, the district court must view the evidence "through the prism of the substantive evidentiary burden." Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2513 (1986). All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986). "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper. Kelley v. Price-Macemon, Inc., 992 F.2d 1408, 1413 (5th Cir. 1993) (citing Matsushita, 106 S. Ct. at 1351). On the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper." Id. Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial." Anderson, 106 S. Ct. at 2513.

## III.  Discussion

Two Defendants named by Plaintiff, Brazos County Juvenile Board and Brazos County Department of Juvenile Services, are subdivisions or departments of Brazos County. See Exhibit 9 to Defendants' Motion for Summary Judgment (Document No. 49).

5

Plaintiff has not shown that either entity is independently subject to suit, and therefore the Brazos County Juvenile Board and the Brazos County Department of Juvenile Services are not proper parties to this suit. *See* <u>Darby v. Pasadena Police Dept.</u>, 939 F.2d 311, 313 (5th Cir. 1991) (upholding the dismissal of Plaintiff's claim against the Pasadena Police Department based on Plaintiff's failure to show that the police department had a separate, jural existence, allowing it to sue and be sued).  In addition, the claims against Rhonda Gilchrist in her official capacity are considered claims against her employer, Brazos County, and are, given that Brazos County is also a Defendant, redundant. *See* <u>Hafer v. Melo</u>, 112 S.Ct. 358, 361 (1991) ("the real party in interest in an official-capacity suit is the governmental entity and not the named official"); <u>Kentucky v. Graham</u>, 105 S.Ct 3099, 3106 n.14 (1985) ("There is no longer a need to bring official-capacity actions against local government officials, for under *Monell, supra,* local government units can be sued directly for damages and injunctive or declaratory relief."). Therefore, Plaintiff's claims against the Brazos County Juvenile Board and the Brazos County Department of Juvenile Services, and against Rhonda Gilchrist in her official capacity, will be dismissed.

6

A.   <u>Title VII Claims</u>

Plaintiff has alleged race discrimination claims against Defendants under both Title VII, 42 U.S.C. § 2000e, et seq., and 42 U.S.C. § 1983.

Filing a timely complaint and obtaining a right to sue letter from the Equal Opportunity Employment Commission ("EEOC") are prerequisites for filing a discrimination suit under Title VII. <u>Taylor v. Books A Million, Inc.</u>, 296 F.3d 376, 378-79 (5th Cir. 2002), *cert. denied*, 537 U.S. 1200 (2003).   When a timely EEOC complaint has not been filed, a plaintiff's Title VII claims are subject to dismissal.   <u>Taylor</u>, 296 F.3d 376, 379 (5th Cir. 2002) (holding that the filing of an EEOC charge is a prerequisite to bringing Title VII claims in federal court); <u>Torres v. County of Webb</u>, 150 Fed. Appx. 286, 291-92 (5th Cir. 2005) ("Under [t]itle VII, exhaustion of administrative remedies is a prerequisite for maintaining a cause of action.   Failure to exhaust remedies results in dismissal on the merits").   The defendant has the burden in a Title VII case to prove by a preponderance of the evidence that the plaintiff failed to exhaust administrative remedies.   <u>Jones v. Greenspan</u>, 402 F.Supp.2d 294, 297 (D.D.C. 2005).

Here, Defendants have met their burden to prove that Plaintiff failed to exhaust her administrative remedies.   In fact, Plaintiff admitted at her deposition that she did not file an EEOC complaint.   *See* Plaintiff's Deposition, attached to Defendants'

7

Motion for Summary Judgment (Document No. 49) as Exhibit 4, at p. 27. In addition, while Plaintiff argues that she should be afforded the benefit of the EEOC complaint filed by one of the former Plaintiffs in this case, there is no evidence of record that any EEOC complaint was filed on Plaintiff's behalf by another person, that it mentioned Plaintiff, or that it encompassed the race discrimination claims now asserted by Plaintiff.[3]

Because the summary judgment evidence is uncontroverted that Plaintiff did not file an EEOC complaint or obtain a right to sue letter from the EEOC, and no other EEOC complaint is shown to have been filed on Plaintiff's behalf, Defendants have conclusively proved that Plaintiff failed to exhaust her administrative

---

[3] In limited circumstances, a plaintiff who has not personally filed an EEOC charge may be allowed to rely on an EEOC charge filed by a similarly situated employee, and "piggyback his judicial action on the claim of a party who followed the administrative procedures." Price v. Choctaw Glove & Safety Co., 459 F.3d 595, 598 (5th Cir. 2006). To be entitled to piggyback on the exhaustion by another plaintiff, however, three conditions must be satisfied:

"First the plaintiff must be similarly situated to the person who actually filed the EEOC charge. Second, the charge must have provided some notice of the collective or class-wide nature of the charge. Finally, a prerequisite--implicit to be sure--for piggybacking under the single filing rule is the requirement that the individual who filed the EEOC charge must actually file a suit that the piggybacking plaintiff may join."

Id. at 599. Here, there is no evidence that any of these three conditions have been met. Plaintiff has not provided the Court with a copy of the EEOC charge she purports to rely on, and all other plaintiffs in this case voluntarily dismissed their claims.

remedies.    Plaintiff's  Title  VII  claims  must  therefore  be
dismissed.

B.    § 1983 Claims

There is no exhaustion requirement for claims brought under 42
U.S.C. § 1983.   Webb v. Board of Education of Dyer County, Tenn.,
105  S.Ct  1923,  1927  (1985)  ("nothing  in  §  1983  requires  that  a
plaintiff  exhaust  his  administrative  remedies  before  bringing  a
§ 1983  suit").   Discrimination  claims  brought  under  42  U.S.C.
§ 1981 and § 1983 are analyzed in the same manner as claims brought
under Title VII.   See Raggs v. Mississippi Power and Light Co., 278
F.3d  463,  468  (5th  Cir.  2002);  see  also  Jones  v.  Robinson  Prop.
Group, L.P., 427 F.3d 987, 992 (5th Cir. 2005) ("the analysis under
[Title VII and § 1981 is] identical, [with] the only substantive
differences between the two statutes being their respective statute
of  limitations  and  the  requirement  under  Title  VII  that  the
employee  exhaust  administrative  remedies")  (internal  citations
omitted).

In an employment context, two classes of discrimination claims
are cognizable: "those in which 'a supervisor takes a tangible
employment  action  against  the  subordinate'  and  those  where  the
employment relationship 'aids in the commission of supervisor
harassment  which  does  not  culminate  in  a  tangible  employment
action,'" but which creates a hostile work environment.   Butler v.

Ysleta Indep. Sch. Dist., 161 F.3d 263, 268 (5th Cir. 1998) (quoting Burlington Ind., Inc. v. Ellerth, 524 U.S. 742, 760, 763 (1998)).  Plaintiff alleges both types of claims in this suit-- that she was subjected to disparate treatment based on her race (African American), and that she was subjected to a racially hostile work environment.

1.   Disparate Treatment Claims

A claim of discrimination based on alleged disparate treatment is proven with either direct evidence of discrimination, or through the indirect method of proof set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  *See* Taylor v. Principal Fin. Group, Inc., 93 F.3d 155, 162 (5th Cir.), *cert. denied*, 519 U.S. 1029 (1996); Daigle v. Liberty Life Ins. Co., 70 F.3d 394, 396 (5th Cir. 1995).  "Direct evidence of discrimination is evidence which, if believed, would prove the existence of a fact (i.e., unlawful discrimination) without any inferences or presumptions." Bodenheimer v. PPG Indus. Inc., 5 F.3d 955, 958 (5th Cir. 1993). For a statement to suffice as direct evidence of discrimination, the statement must directly suggest the existence of bias and must not be subject to interpretation as anything other than a reflection of bias.  *See* Mooney v. Aramco Svcs. Co., 54 F.3d 1207, 1217 (5th Cir. 1995) (citing Davis v. Chevron U.S.A. Inc., 14 F.3d

1082, 1085 (5th Cir. 1994)). Here, there is no direct evidence of discrimination.

Under the indirect method of proof set forth in McDonnell Douglas, a plaintiff must first establish a *prima facie* case of discrimination. A *prima facie* case of disparate treatment discrimination based on race, "color," or national origin requires proof that the plaintiff (1) is a member of a protected class; (2) was qualified for the position; (3) suffered an adverse employment action; and (4) was replaced by someone outside the protected class or treated less favorably than a similarly situated individual outside the protected class. Okoye v. Univ. of Texas Houston Health Science Center, 245 F.3d 507, 512-13 (5th Cir. 2001); Rios v. Rossotti, 252 F.3d 375, 378 (5th Cir. 2001). Once the plaintiff establishes a *prima facie* case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions. Reeves v. Sanderson Plumbing Prods., Inc., 120 S. Ct. 2097, 2106 (2000). The burden on the employer at this stage "is one of production, not persuasion; it 'can involve no credibility assessment.'" Id. (quoting St. Mary's Honor Ctr. v. Hicks, 113 S. Ct. 2742, 2748 (1993)). If the employer sustains its burden, the *prima facie* case is dissolved, and the burden shifts back to the plaintiff to establish either: (1) that the employer's proffered reason "is not true, but is instead a pretext for discrimination (pretext alternative)"; or (2) the employer's

11

reason, while true, is not the only reason for its conduct, and another "motivating factor" is the plaintiff's protected characteristic (mixed-motive alternative). <u>Rachid v. Jack in the Box, Inc.</u>, 376 F.3d 305, 312 (5th Cir. 2004). If the plaintiff "demonstrates that [her protected characteristic] was a motivating factor in the [employer's decision to terminate her], it then falls to the [employer] to prove 'that the same adverse employment decision would have been made regardless of discriminatory animus.'" <u>Id.</u> (quoting <u>Mooney v. Aramco Servs. Co.</u>, 54 F.3d 1207, 1217 (5th Cir. 1995)) If the employer fails to carry this burden, the plaintiff prevails. <u>Id.</u> Here, Plaintiff does not argue, and there are no pleadings to support, a mixed motive theory of discrimination. As such, Plaintiff's disparate treatment claim will be considered under the more traditional pretext analysis. <i>See e.g.</i>, <u>Johnson v. Saks Fifth Ave. TX, L.P.</u>, 2007 WL 781946 at *21 (S.D. Tex. 2007) (Rosenthal, J; <i>see also</i> <u>Ward v. Midwestern State Univ.</u>, 2007 WL 464693 at *3 & n.20 (5th Cir. 2007) (concluding that the plaintiff waived appellate review on a mixed motive theory where no mixed motive argument or evidence was presented to the district court).

Defendants argue that Plaintiff has not made a <i>prima facie</i> case of race discrimination because there is no summary judgment evidence that she was either replaced by someone outside the protected class or was treated less favorably than a similarly

12

situated individual outside the protected class.  A review of the record reveals no allegations or summary judgment evidence regarding who replaced Plaintiff as a juvenile detention officer after her resignation/termination.  Further, there is no summary judgment evidence that someone outside of Plaintiff's protected class (African-American) was treated more favorably than Plaintiff *in nearly identical circumstances*.  "[I]n order for a plaintiff to show disparate treatment, she must demonstrate 'that the misconduct for which she was discharged was nearly identical to that engaged in by a[n] employee [not within her protected class] whom [the company] retained.'"  Wallace v. Methodist Hosp. Sys., 271 F.3d 212, 221 (5th Cir. 2001), *cert. denied*, 122 S. Ct. 1961 (2002); *see also* Little v. Republic Refining Co., 924 F.2d 93, 97 (5th Cir. 1991) ("To establish a claim of disparate treatment, [the plaintiff] must show that [the defendant] gave preferential treatment to [a member outside the protected class] under 'nearly identical' circumstances."); Aquinaga v. Texas Alcohol and Beverage Comm'n, 98 Fed. Appx. 328, 331, 2004 WL 1161914 (5th Cir. 2004) (the differing treatment must be under nearly identical circumstances to satisfy the fourth element of a *prima facie* case of disparate treatment).

Plaintiff argues, in response to Defendants' motions for summary judgment, that she was the only employee responsible for bed checks who was asked to resign in lieu of termination.  In

13

addition, Plaintiff maintains that Gary Youngblood, a Caucasian male, was not terminated or asked to resign despite having more serious infractions than hers, including leaving a child locked in the intake area, administering the wrong medication to a child, and not completing required bed checks on other dates. Neither circumstance raises a genuine issue of material fact as to whether Plaintiff was treated less favorably than those outside the protected class. While Defendants admit, and the record shows, that no other employee was terminated or asked to resign in connection with the failure to perform bed checks on November 10-11, 2003, there is no summary judgment evidence that any employee other than Plaintiff falsely represented that bed checks had been done. Indeed, the summary judgment evidence is that it was only Plaintiff who, by initialing on the "C Pod" logs, falsely represented that she had performed certain bed checks when she had not done so. There is no summary judgment evidence that Mr. Youngblood, named by Plaintiff as her comparitor, ever falsified documents regarding bed checks, no summary judgment evidence as to when Mr. Youngblood's dissimilar misconduct took place, and no summary judgment evidence that Defendant Gilchrist ever became aware of Mr. Youngblood's misconduct.[4]   Because Plaintiff has

---

[4] Gilchrist testified in her deposition that she had no knowledge of Mr. Youngblood's alleged infractions:

Q:   Do you recall an incident where Mr. Youngblood left a detainee overnight without supervision?

14

presented no summary judgment evidence that she either was replaced by someone outside of her protected class or was treated less favorably than similarly situated employees outside her protected class under nearly identical circumstances, Plaintiff has not established a *prima facie* case of race discrimination.

Moreover, even if other employee misconduct were sufficiently similar to Plaintiff's to sustain a *prima facie* case of race discrimination, Plaintiff has not responded with any summary judgment evidence to show that Defendants' legitimate, non-discriminatory reason for asking Plaintiff to resign was not true, but was merely a pretext for discrimination.[5] Plaintiff admitted

---

A:   No, sir.
Q:   Would that have been reported to you?
A:    It should have been reported to me, but I do not recall it being reported to me.  I would have fired him on the spot for it.
Q:   And the same situation with wrong medications?
A:   Yes, sir.
Q:   Was that reported to you?
A:    It was not reported to me.

Deposition of Rhonda Gilchrist, attached to Defendants' Objections and Response to Plaintiff's Cross Motion for Summary Judgment (Document No. 62) as Exhibit 3, at pp. 40-41.

[5]  In the employee discipline plan for Plaintiff, dated November 11, 2003, the reason for Plaintiff's resignation in lieu of termination was set forth as follows:

On November 10-11, 2003, Ms. Henderson-Manuel failed to conduct and document any room checks on Charlie pod from approximately 12:50 a.m. to 3:58 a.m. Furthermore, when asked, Ms. Henderson-Manuel admitted that she had written the times on the "Charlie" pod room check lists without actually seeing the children that were assigned to those rooms.

at her deposition that she initialed a "C Pod" log, verifying that she had done bed checks on "C Pod" on November 11, 2003, after 12:45 a.m., when that was not true.  *See* Plaintiff's Deposition, attached to Defendants' Motion for Summary Judgment (Document No. 49) as Exhibit 4, at p. 56-57.  Although Plaintiff claimed that she mistook the "C Pod" logs for "D Pod" logs and did not intend to misrepresent that "C Pod" beds had been checked, this does not make Defendants' legitimate nondiscriminatory reason for Plaintiff's requested resignation any less true.  As for evidence of pretext, there is none--no summary judgment evidence of any racial animus on the part of Gilchrist in general, and no summary judgment evidence that race played any part in Gilchrist's decision to ask for Plaintiff's termination.  Plaintiff herself, some six months after her resignation/termination, testified under oath before the Juvenile Services Board that race played no part in Gilchrist's decision.  *See* Exhibit 6 to Defendant's Motion for Summary Judgment (Document No. 49) at 8 (". . . And that is unfair.  It is not about race.  Not with me, it's not about racial [sic].").

Because Plaintiff has not established a *prima facie* case of race discrimination, and because there is no summary judgment evidence that Defendants' legitimate nondiscriminatory reason for

---

Exhibit 5 to Defendants' Motion for Summary Judgment (Document No. 49).  An employee's falsification of documents has been found to constitute a legitimate, non-discriminatory reason for termination. *See* <u>Moore v. Eli Lilly & Co.</u>, 802 F.Supp. 1468, 1472 (N.D. Tex. 1992).

16

asking for Plaintiff's resignation in lieu of termination was not true and was a pretext for race discrimination, Defendants are entitled to summary judgment on Plaintiff's disparate treatment race discrimination claim.

2.   Hostile Work Environment Claims

Plaintiff's other discrimination claim, based on a racially hostile work environment, requires Plaintiff to prove that: (1) she is a member of a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her race, and (4) the harassment affected a term, condition, or privilege of employment.  Cortes v. Maxus Exploration Co., 977 F.2d 195, 199 (5th Cir. 1992); McCray v. DPC Indus., Inc., 942 F.Supp. 288, 292 (E.D. Tex. 1996).  To be actionable, the challenged conduct must be sufficiently severe or pervasive in the work environment.  Harris v. Forklift Sys., Inc., 510 U.S. 17, 21-23 (1993).  Whether the harassment is sufficiently severe or pervasive is based on the totality of the circumstances:

> [W]hether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.

Id. at 23; *accord* Long v. Eastfield College, 88 F.3d 300, 309 (5th Cir. 1996).  The conduct must be both objectively hostile to a reasonable person and the plaintiff must subjectively perceive the environment to be abusive.  Harris, 510 U.S. at 21-22.

Here, the summary judgment evidence does not raise so much as a genuine issue of material fact that there was a racially hostile work environment.  The only summary judgment evidence of any race-based comments or conduct is attributed to one of Plaintiff's non-supervisory co-workers (Ms. Stevens) in the form of racial epithets.  Plaintiff has offered no summary judgment evidence that the racial epithets were directed at her, that the epithets were routine or pervasive, or that anyone other than Ms. Stevens engaged in such conduct.  The summary judgment evidence does not raise a genuine issue of material fact that Plaintiff was subjected to a racially hostile work environment within the meaning of Harris.

C.   State law claims

Plaintiff also asserts state law claims for breach of contract, breach of implied contract, and intentional infliction of emotional distress.  Each of these state law claims fails as a matter of law.

Plaintiff admitted at her deposition that she had no written or signed employment contact, and no entitlement to any definite term of employment.  *See* Plaintiff's Deposition, attached to

18

Defendants' Motion for Summary Judgment (Document No. 49) at pp. 75-76.  Based on Plaintiff's characterization of her own employment relationship, Plaintiff was an at-will employee.  Her at-will status negates her breach of contract claim.  *See* <u>Caton v. Leach Corp.</u>, 896 F.2d 939, 948 (5th Cir. 1990) (where Plaintiff was an employee at will, the defendant "had the right to terminate him at any time, for any reason" and therefore the defendant broke no contract when it terminated the plaintiff); <u>Beauboeuf v. Phillips Petroleum Co.</u>, 147 F.Supp.2d 654, 656 (S.D. Tex. 2001) (granting summary judgment on the plaintiff's breach of contract claim where the plaintiff was an at-will employee and there were no circumstances that altered the plaintiff's at-will status).

Defendant Brazos County has sovereign immunity under § 101.057 of the Texas Civil Practice and Remedies Code from Plaintiff's intentional infliction of emotional distress claim.  *See e.g.*, <u>Torres v. County of Webb</u>, 150 Fed. Appx. 286, 290) (5th Cir. 2005); <u>Gillum v. City of Kerrville</u>, 3 F.3d 117, 123 (5th Cir. 1993). Moreover, on that claim Plaintiff has presented no evidence or argument that Defendant Gilchrist's conduct was in any way extreme and outrageous.  In order to prevail on an intentional infliction of emotional distress claim, Plaintiff must show that: (1) Gilchrist acted intentionally or recklessly; (2) the conduct was extreme and outrageous; (3) the actions of Gilchrist caused Plaintiff emotional distress; and (4) the resulting emotional

distress was severe.  Standard Fruit & Vegetable Co. v. Johnson, 985 S.W.2d 62, 65 (Tex. 1998).  Conduct is extreme and outrageous only if it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  GTE Sw., Inc. v. Bruce, 998 S.W.2d 605, 611 (Tex. 1999)(citations omitted).  Because there is no summary judgment evidence that Gilchrist engaged in any conduct that could be considered extreme and outrageous, and because Plaintiff has not defended this claim in response to Gilchrist's motion for summary judgment, Gilchrist is entitled to summary judgment.  See, e.g., Harris-Childs v. Medco Health Solutions, Inc., 2005 WL 562720, at *9 (N.D. Tex. 2005); Stewart v. Houston Lighting & Power Co., 998 F. Supp. 746, 748-49 (S.D. Tex. 1998); Diamond Shamrock Ref. & Mktg. Co. v. Mendez, 844 S.W.2d 198, 202 (Tex. 1992).

### IV. Order

Based on the foregoing, it is

ORDERED that the Motion for Summary Judgment (Document No. 49) filed by Defendants Brazos County, Brazos County Juvenile Board, and Brazos County Department of Juvenile Services, and Defendant Rhonda Gilchrist's Motion for Summary Judgment (Document No. 55), are both GRANTED, Plaintiff Kami Henderson-Manuel's Cross Motions for Summary Judgment (Document Nos. 57 and 63) are both DENIED, and

Plaintiff Kami Henderson-Manuel's claims are DISMISSED WITH PREJUDICE on the merits.

The Clerk will enter this Order and send copies to all counsel of record.

SIGNED at Houston, Texas on this 24th day of April, 2007.

_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE